**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS BENIGNO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN WALSH, ACTING STATE COMPTROLLER, STATE OF NEW JERSEY, OFFICE OF THE STATE COMPTROLLER, <br><br> Defendant. | Civil Action No. 23-3248 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Kevin Walsh's[1] ("Walsh" or "Defendant") Motion to Dismiss Plaintiffs Dennis Benigno ("Benigno") and New Jersey Criminal Interdiction LLC d/b/a Street Cop Training's ("Street Cop" or the "Company") (collectively "Plaintiffs") Amended Complaint (ECF No. 5) pursuant to Federal Rule of Civil Procedure[2] 12(b)(1) and 12(b)(6).[3] Plaintiffs opposed the Motion (ECF No. 17), and Defendant replied (ECF No. 18). The Court has considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's motion is granted.

---

[1] Defendant acts in his official capacity as Acting State Comptroller, Office of the State Comptroller ("OSC") for the State of New Jersey. (ECF No. 13.)

[2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[3] In the alternative, Defendant asserts that the Motion to Dismiss may be converted to a Motion for Summary Judgment pursuant to Rule 56. (ECF No. 13.)

## I. BACKGROUND

This matter was initiated by Plaintiffs on June 13, 2023, through the filing of a single Count[4] Complaint under 42 U.S.C. § 1983 for alleged violations of their First and Fourth Amendment rights. (*See* Compl. ¶¶ 19-29, ECF No. 1.) Plaintiffs' claims trace back to a series of subpoenas that were issued by the OSC against them in June 2022 and May 2023, respectively. (*See* Am. Compl. ¶¶ 21, 24, ECF No. 5.) From the outset, the Court notes that this case has amassed an extensive procedural history and the fundamental dispute in the Amended Complaint has been litigated extensively in the New Jersey Superior Court ("State Court") and the New Jersey Superior Court, Appellate Division ("Appellate Division"). *See, e.g., N.J. Crim. Interdiction LLC v. Walsh*, A-4009-21, 2022 WL 17174438, at *11 (N.J. Super. Ct. App. Div. Nov. 23, 2022). The following factual and procedural recitation therefore only provides the facts that are necessary to resolve the pending motion.

### A. The Parties

Plaintiff Benigno is the owner and Chief Executive Officer ("CEO") of Street Cop, a private vendor that provides police training services to local law enforcement in the State of New Jersey. (Am. Compl. ¶¶ 1-2; Pls.' Opp'n Br. 5, ECF No. 17.) As one of the largest police training providers in the United States, Street Cop offers training services to approximately 25,000 to 30,000 police officers annually. *NJ Crim. Interdiction*, 2022 WL 17174438, at *4. Walsh is the Acting State Comptroller and Department Head of the OSC, and responsible for supervising the investigation of Street Cop. (Am. Compl. ¶ 3.)

---

[4] Two days after filing the initial Complaint, Plaintiffs amended the Complaint. (*See generally* Am. Compl.) The Court will therefore refer to the Amended Complaint as the operative pleading in this matter.

The OSC is "an independent state agency focused on the accountability, transparency, and efficiency of the state executive branch and its finances." (Certification of John D. North, Esq. ["North Cert."], Ex. H, at *107[5], ECF No. 13-4.) In this capacity, the OSC has a wide range of authority "to access documents from state and local law enforcement agencies, including private police training materials and curricula because they are entities that are part of the executive branch or are exercising executive branch authority." (*Id.* at *109 (citing N.J. Stat. Ann. § 52:15C-14(b)).) To achieve the oversight necessary to effectuate its statutory mandate, the OSC also has authority to "subpoena, any documents, books, records, papers, objects, or other evidence" it "reasonably believes may relate to a matter under investigation." N.J. Stat. Ann. § 52:15B-8(c). "If any person to whom such subpoena is issued" refuses to comply with a subpoena issued by the OSC, then the OSC "may apply to the Superior Court and the court may order the person to" comply with the same. *Id.*

In November 2021, the OSC launched the "Police Accountability Project," publicly stating that the goal of the project is to "detect[] waste, fraud, abuse, and misconduct in law enforcement agencies exercising executive branch authority and review[] and report[] to the general public on how taxpayer funds are used for policing." (*Id.*)

B.   **The State Court Proceedings**

Central to the parties' dispute in this case is a five-day training conference (the "Conference") that Street Cop held in Atlantic City, New Jersey. (Am. Compl. ¶ 4.) In October 2021, Street Cop hosted the Conference, which was attended by approximately 1000 individuals, including law enforcement officers from New Jersey and across the United States. (*Id.*; *see also* North Cert., Ex. C, ¶ 13.) One of the speakers at the Conference was Tomi Lahren ("Lahren")—a

---

[5] Page numbers preceded by an asterisk reflect page numbers atop the ECF header.

3

Fox News personality who is commonly associated with the Republican Party because of her political viewpoints. (North Cert., Ex. C, ¶ 15.) Plaintiffs claim that because of Lahren's presence, the Conference received considerable media attention from news outlets that have opposing political views from Lahren. (*Id.*)

Approximately a year and a half later, Street Cop received a "First Request for Production of Documents" (the "Document Requests") from the OSC. (*Id.* ¶ 27.) The Document Requests sought the production of five categories of documents related to the Conference. (*Id.*) Citing its vested authority under N.J. Stat. Ann. § 52:15C-14(d),[6] the OSC requested that Street Cop produce the following materials: (1) any and all documents concerning payment for services by any New Jersey law enforcement agency to Street Cop; (2) a list of New Jersey law enforcement attendees of Street Cop's Conference; (3) an unedited video copy of the Conference; (4) copies of any written materials provided to attendees during or after the Conference; and (5) any and all documents and information concerning the qualifications of the instructors who were present at the Conference. (*See* North Cert., Ex. B, at *18-19.)

        *i.*    *The First State Court Action*

Rather than respond to the first set of Document Requests, Street Cop filed a state court complaint (the "First State Court Action") against the OSC alleging that the OSC exceeded its statutory authority, violated the Administrative Procedures Act ("APA"), and violated Street Cop's constitutional rights under the New Jersey Civil Rights Act. (*See* North Cert., Ex. C, at *54, *60); *see also* State Court Docket No. MER-L-996-22.) Accompanying the state court complaint was a motion for an order to show cause, which in relevant part, sought to: (1) enjoin the OSC from

---

[6] The statute dictates the circumstances under which individuals, including private vendors who receive funds from a unit in the Executive branch of State government, are obligated to grant access to pertinent documentation to the State Comptroller. N.J. Stat. Ann. § 52:15C-14(d).

compelling Street Cop to comply with the OSC's Document Requests; (2) declare the Police Accountability Project exceeded the OSC's statutory authority; and (3) refrain the OSC from making future document requests without first establishing the relevance of the documents sought by the agency. (North Cert., Ex. B, at *45-46; *see also* North Cert., Ex. H, at *112.) These efforts, however, were unsuccessful. The State Court denied Street Cop's order to show cause on June 10, 2022. (North Cert., Ex. D, at *70-71.)

>    ii.     *The 2022 Subpoena and Related Litigation*

Nearly two weeks later, on June 23, 2022, the OSC issued an administrative action subpoena (the "2022 Subpoena") on Street Cop's place of business—demanding that Street Cop produce the same documents and information identified in the Document Requests. (North Cert., Ex. E, at *74-75.) On the same State Court docket, Street Cop moved to quash and sought a protective order against the OSC hoping to prevent the OSC from filing any other subpoenas until its state court complaint was adjudicated. (Def.'s Moving Br. 4-5, ECF No. 13-1; *see also* North Cert. Ex. F, at *79.) The OSC opposed Street Cop's motion to quash and cross-moved to enforce the 2022 Subpoena. (*Id.*) On July 26, 2022, the State Court denied Street Cop's motion to quash and granted the OSC's motion to enforce the subpoena. (North Cert., Ex. F, at *78.) Street Cop was directed to comply with the 2022 Subpoena within fourteen days of the State Court's order. (*Id.*)

Street Cop filed an appeal[7], but once more, to no avail. (North Cert., Ex. H, at *116-18.) In affirming the State Court's decision, the Appellate Division determined that "[N.J. Stat. Ann. §] 52:15B-8(c) gives . . . [the] OSC[] the authority to issue a subpoena to compel sworn testimony

---

[7] Street Cop filed a motion for leave to appeal the July 2022 order—which was later granted by the Superior Court of New Jersey, Appellate Division ("Appellate Division") on August 29, 2022. *NJ Crim. Interdiction*, 2022 WL 17174438, at *9.

'in furtherance of an investigation' where '[the OSC] reasonably believes [the documents] may relate to a matter under investigation.'" (*Id.* at *116.) The Appellate Division further determined that N.J. Stat. Ann. § 52:15C-14(d) gives the State Comptroller prompt access to all relevant documents and information from private vendors or persons contracting or receiving funds from a unit of the Executive branch of the state government—as a condition of the contract and receipt of public monies. (*Id.* at *116-17.)

As such, the Appellate Division declared that: (1) the 2022 Subpoena was issued for a proper investigative purpose pursuant to N.J. Stat. Ann. § 52:15B-8(C), because it is relevant to the contract and receipt of public monies pertaining to Street Cop's October 2021 police training conference pursuant to N.J. Stat. Ann. § 52:15C-14(d); (2) Street Cop's arguments that OSC exceeded its statutory authority by "target[ing]" Street Cop "based on politics" were "meritless"; and (3) the trial court did not abuse its discretion in finding that the 2022 Subpoena was issued within the confines of the OSC's statutory authority. (*Id.* at *117-18.)

Street Cop filed a motion for leave to appeal to the New Jersey Supreme Court. (*See* North Cert., Ex. M, at *12, ECF No. 13-5.) The New Jersey Supreme Court denied Street Cop's motion for leave to appeal—leaving fully intact the Appellate Division's decision. (*Id.*)

    *iii.*    *The 2023 Subpoena*

This story continued when, in May 2023, the OSC issued an additional subpoena (the "2023 Subpoena") to obtain the sworn testimony of Benigno, Street Cop's CEO. (*See* Am. Compl. ¶ 13.) The 2023 Subpoena sought the same five categories of documents[8] and materials previously

---

[8] In terms of any differences, the 2023 Subpoena sought Benigno's own testimony, as well as: "[t]he receipt and use of public funds by [Street Cop] for police training services rendered in New Jersey including . . . police training services rendered by [Street Cop] at the [Conference], payment for services, registration, attendees, instructors/speakers, vendors, presentations, video footage, written or other materials . . . ." (North Cert., Ex. O, at *32.)

6

requested in the 2022 Subpoena. (*Id.*) Benigno refused to comply with the 2023 Subpoena absent a court order. (*See* Certification of Deborah Hay ["Hay Cert."], ¶ 30, ECF No. 13-3.) Benigno responded that his compliance with the 2023 Subpoena would be "held in abeyance pending the federal court['s] resolution of [Street Cop's] request for prospective/injunctive relief." (*Id.* ¶ 25.)

### C. The Instant Action

Rather than comply with the aforesaid subpoenas, Plaintiffs filed the instant federal lawsuit (the "Instant Action") in June 2023. (*See generally* Am. Compl.) In the Instant Action, Plaintiffs seek relief under 42 U.S.C. § 1983 and contend that the 2023 Subpoena violates their First and Fourth Amendment rights because it does not adequately describe why the OSC requires Benigno's testimony.[9] (*Id.* ¶¶ 24-25.) More specifically, Benigno alleges that he has "no idea what to expect during his recorded interrogation under oath" and thus the 2023 Subpoena is overbroad, harassing, and violates his First and Fourth Amendment rights. (*Id.* ¶ 25.) With respect to the relief sought, Plaintiffs request: (1) a declaratory judgment that the 2023 Subpoena violates Plaintiffs' constitutional rights; (2) an order enjoining Walsh and the OSC from proceeding with the testimonial hearing outlined in the 2023 Subpoena; (3) an order requiring Walsh to use "less invasive methods to obtain information from Plaintiffs" regarding the documents sought prior to seeking to compel Benigno's testimony; and (4) attorney's fees and costs under 42 U.S.C. § 1988. (*Id.* at 9.)

---

[9] Plaintiffs contend that the materials sought in the 2023 Subpoena have "already [been] turned over to the OSC." (Am. Compl. ¶ 13.) The Amended Complaint alleges that Plaintiffs uploaded "many gigabytes of files" to an online portal provided by the OSC. (Am. Compl. ¶¶ 10-11.) As such, Plaintiffs contend that "[t]he subpoenaed documents are already in Defendant's possession[]" and "there is nothing that [] Benigno's testimony can add to those documents which speak for themselves." (*Id.* ¶ 16.)

### D.  The OSC's Enforcement Actions

The OSC also commenced its own legal proceedings against Plaintiffs to compel compliance with the 2022 and 2023 Subpoenas (the "Enforcement Actions"). (*See* Def.'s Moving Br. 12-13.) On July 25, 2023, the OSC filed a motion to enforce litigant's rights based on Street Cop's failure to comply with the 2022 Subpoena. (*Id.* at 12 (citing State Docket No. MER-L-996-22).) That same day, the OSC filed a complaint and moved for an order to show cause in the New Jersey Superior Court to enforce compliance with the 2023 Subpoena. (*Id.* (citing MER-L-1423-23).) Nearly a month later, in September 2023, counsel for the OSC submitted correspondence confirming that the State Court granted the OSC's motion to enforce litigant's rights in connection to the 2022 Subpoena. (*See* Correspondence from John D. North, Esq. ["North Correspondence"], at 3-4, ECF No. 19.)

Notably, the State Court also granted the OSC's application for an order to show cause to enforce the 2023 Subpoena and denied Plaintiffs' cross-motion to quash the same. (*Id.* at 17-18.) In moving to quash the 2023 Subpoena, Plaintiffs advanced many of the same arguments that are presented in the Instant Action. (*See id.* at *24; Am. Compl. ¶¶ 19-30.) Plaintiffs asserted, among other things, that: (1) the 2023 Subpoena must be quashed because the OSC unlawfully targeted Plaintiffs, and (2) the 2023 Subpoena violated Plaintiffs' First and Fourth Amendment rights. (North Correspondence, at 24-25.) Plaintiffs also requested that the State Court stay proceedings during the pendency of the federal proceedings. (*Id.* at 3, 7.)

Each of Plaintiffs' arguments in support of their motion to quash were denied. First, the State Court determined that:

> OSC's implementing statute authorizes it to take sworn testimony and does not limit its use of video technology. . . . [Plaintiffs] identify no statutory or due process limitation to videorecording sworn testimony in a civil or investigatory context. The

> unexceptional use of videotaped testimony in all contexts of civil litigation, as well as the similarity between the 2022 and the 2023 subpoenas, render hollow [Plaintiffs'] protests of harassment and retaliation.

(*Id.* at 27.)

Second, the State Court declared that the "OSC plainly has authority to both subpoena testimony and documents and neither its authorizing legislation nor due process require it to exhaust its documentary investigation before seeking Defendant Benigno's sworn oral testimony." (*Id.* at 28.) Third, as to Plaintiffs' request to stay the State Court proceedings during the pendency of this federal action, the State Court found that Plaintiffs did not establish irreparable harm or a reasonable likelihood of success on the merits; rather, the State Court found "no constitutional or due process infirmity with [the OSC] videotaping [Benigno's] statement[s]." (*Id.* at 29.) In summary, the State Court found that,

> [T]he mere filing of a federal lawsuit cannot, by itself, merit a stay; to conclude otherwise would allow any entity seeking to resist the lawful exercise of [s]tate legislative authority to run into federal court, file a complaint, and run the clock on the [s]tate action. That is not the appropriate interplay between [s]tate and federal authority.

(*Id.* at 30.)

## II. **LEGAL STANDARD**

"Although *res judicata* and collateral estoppel are affirmative defenses, they may be raised in a motion to dismiss under [Rule] 12(b)(6)." *Walzer v. Muriel, Siebert & Co.*, 221 F. App'x 153, 155 (3d Cir. 2007). District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light

most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

"Generally, '[t]o the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." *Toscano v. Conn. Gen. Life Ins.*, 288 F. App'x 36 (3d Cir. 2008) (alterations in original) (citations omitted). "The defense of claim preclusion, however, may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision." *Id.* at 38 (citations omitted). "Specifically, a court may take judicial notice of the record from a previous court proceeding between the parties." *Id.*; *see also Conceicao v. Nat'l Water Main Cleaning Co.*, 650 F. App'x 134, 135 (3d Cir. 2016) ("The defense of claim preclusion, however, may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision."). "The party seeking to take advantage of claim preclusion has the burden of establishing it." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 158 (3d Cir. 2001).

## III.   DISCUSSION

In moving to dismiss Plaintiffs' Amended Complaint, Walsh argues that: (1) the Court lacks jurisdiction under the *Rooker-Feldman* doctrine;[10] (2) the Court should abstain from interfering with ongoing State Court proceedings based upon the *Younger* abstention doctrine;[11] (3) the Amended Complaint fails to present a claim upon which relief can be granted;[12] and (4) Plaintiffs' claims are precluded by the collateral estoppel doctrine. (*See* Def.'s Moving Br. 15-36.) The Court agrees with the fourth argument for dismissal under preclusionary principles; namely, that the doctrine of res judicata bars this federal action.[13]

An action is barred by res judicata in circumstances where there has been: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *United States v. Athlone Indus.*, 746 F.2d 977,

---

[10] It is not immediately apparent to the Court whether *Rooker-Feldman* applies here because the State Court's decisions on the Enforcement Actions were not rendered until after this federal action was initiated. *See Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (noting that the third element of the *Rooker Feldman* doctrine requires that applicable "judgments were rendered before the federal suit was filed."). While the Court does not rule out, per se, the applicability of the *Rooker-Feldman* doctrine, the Court need not reach the issue because an independent basis for dismissal exists.

[11] While *Younger* abstention *may* apply in these circumstances, the Court declines to explore whether the OSC's Enforcement Actions constitute the requisite "quasi-criminal" proceeding for this doctrine to apply. *See, e.g., Smith & Wesson Brands, Inc. v. AG*, 27 F.4th 886, 891 (3d Cir. 2022).

[12] The Court need not reach the issue of whether Plaintiffs fail to state a claim under Rule 12(b)(6) considering the findings reached herein.

[13] Though res judicata is not squarely raised on the face of Defendant's moving brief, Third Circuit persuasive authority states that district courts have the power to *sua sponte* dismiss an action if res judicata applies. *See Atwell v. Metterau*, 255 F. App'x 655, 657 (3d Cir. 2007) ("[A] court may sua sponte dismiss an action on [the ground of res judicata] where the court is on notice that it previously decided the issue presented." (citing *Arizona v. California*, 530 U.S. 392, 412 (2000))); *King v. East Lampeter Township*, 69 F. App'x 94, 96 (3d Cir. 2003) (affirming the district court's sua sponte dismissal of a pro se action based on res judicata).

983 (3d Cir. 1984) (citations omitted). The Court must remain mindful of the central purpose of the doctrine: to "require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010)). Res judicata "bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted).

### A.   Final Judgment on the Merits

Here, the claims alleged by Plaintiffs meet all three criteria for res judicata to apply. The issues raised by Street Cop in the First State Court Action were decided with finality. The State Court, Appellate Division, and the New Jersey Supreme Court each rejected Street Cop's attempts to evade the 2022 Subpoena and declined Street Cop's argument that the OSC violated its constitutional rights. (North Cert., Ex. H, at *116-18; North Cert., Ex. M, at *12.) The Appellate Division rendered its decision on November 23, 2022. 2022 WL 17174438, at *11. (North Cert., Ex. H, at *106.). The New Jersey Supreme Court's order denying Street Cop's leave to appeal in March 2023, in turn, renders the Appellate Division's decision as a final judgment on the merits. (North Cert., Ex. M, at *12.)

To the extent that Plaintiffs may argue that this action pertains *only* to the 2023 Subpoena (and not the 2022 Subpoena), that argument similarly fails. Defendant provided subsequent correspondence after this matter was fully briefed and confirmed that the State Court granted the relief sought by the OSC in the Enforcement Actions. (*See* North Correspondence.) As detailed above, the State Court denied Plaintiffs' application to quash the 2023 Subpoena. (*Id.* at 17-30.) The State Court's denial of Plaintiffs' motion to quash the 2023 Subpoena is a decision on the merits for purposes of res judicata. See *Smith & Wesson Brands, Inc. v. Grewal*, No. 20-19047,

2022 WL 17959579, at *14-15 (D.N.J. Dec. 27, 2022) ("the Court finds . . . that Judge Alper's June 30, 2021 order compelling S&W to respond to the Subpoena represents a prior final judgment on the merits in a suit involving the same parties, and thus, that the first two *res judicata* elements are satisfied"); *see also First Choice Women's Res. Ctrs., Inc. v. Platkin*, No. 23-23076, 2024 WL 150096, at *4 (D.N.J. Jan. 12, 2024) (finding that a state administrative subpoena "that derives its authority from a state statute identifying a state court as the subpoena's sole enforcement mechanism may seldom if ever be ripe for adjudication in federal court. This is because, as the law currently stands in this District, if a plaintiff's claims in federal court are not ripe until after a state court has ruled on the enforceability of a subpoena, *res judicata principles will likely bar a plaintiff from filing a claim in federal court pertaining to the state-court enforced subpoena*.") (emphasis added); N.J.S.A. 52:15B-8(c) (noting that "[i]f any person to whom such subpoena is issued fails to" respond to the state administrative subpoena, the "[OSC] may apply to the Superior Court and the court may order the person to appear and give testimony or produce the books, papers or other documents, as applicable."). The Court, accordingly, finds that the first element is met here.

### B. Same Parties or Privies as the First State Court Action

The second element for res judicata to apply is also met. The prior State Court proceedings and this federal action involve the same parties; namely, the OSC, Walsh, and Street Cop. *Athlone Indus.*, 746 F.2d at 983. While Benigno may not have been named as a plaintiff in the First State Court Action, the Court finds that he is a party in privity with Street Cop as its owner. (Am. Compl. ¶¶ 1-2.) *See also Gupta*, 2017 WL 6402636, at *9 (finding privity to exist where the president of a company, not named in the initial lawsuit, was the "President" of the company and the allegations levied against him in the subsequent suit were the same as those against the company and stemmed from the employment relationship); *Hickox v. County of Blair*, 591 F. App'x 107, 110 (3d Cir.

2014) (affirming the district court's dismissal of the plaintiff's second complaint on the ground of claim preclusion, despite the fact that the second complaint included an additional defendant not named in the first); *Heine v. Dir. of Codes & Standards*, No. 15-8210, 2017 WL 3981135, at *8 (D.N.J. Sept. 11, 2017) (applying claim preclusion, where the parties in the first and second actions were identical, with the exception of several additional parties in the second case).[14] The Court, accordingly, finds that the second element is met here.

C.  **Same Claims and Causes of Action**

Finally, the Court finds that the third element is met considering that the Instant Action is based on the same claims and causes of action that were presented in the First State Court Action and the Enforcement Actions. (*See* North Correspondence.) The Third Circuit has disavowed attempts to create a "simple test . . . for . . . determining what constitutes a cause of action for *res judicata* purposes." *Athlone Indus.*, 746 F.2d at 983 (quoting *Donegal Steel Foundry Co. v. Accurate Prod.*, 516 F.2d 583, 588 n.10 (3d Cir. 1975)). Rather, the court generally takes a "broad view" to decide whether two suits are based on the same cause of action—looking at whether "there is an 'essential similarity of the underlying events giving rise to the various claims.'" *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (quoting *Athlone Indus.*, 746 F.2d at 984). The "essential similarity" approach "reflects the 'present trend . . . of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" *Duhaney v. Att' Gen. of U.S.*, 621 F.3d 340, 348 (3d Cir. 2010) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)).

---

[14] And if this were not enough, Benigno was named as a direct Defendant in the Enforcement Actions. (*See* State Court Docket Nos. MER-L-996-22; MER-L-1423-23.)

In deciding whether a case involves the same cause of action, the Court analyzes: (1) "whether the acts complained of and the demand for relief are the same"; (2) "whether the theory of recovery is the same"; (3) "whether the witnesses and documents necessary at trial are the same"; and (4) "whether the material facts alleged are the same." *Athlone*, 746 F.2d at 984 (citations omitted). "It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Blunt*, 767 F.3d at 277 (citations omitted).

Here, after reviewing the relevant *Athlone* factors in light of the "essential similarity of the underlying events giving rise" to Plaintiffs' legal claims, the Court finds that Plaintiffs' claims in this action are essentially duplicative of the claims asserted in the First State Court Action and the defenses raised in the Enforcement Actions. (*See* North Correspondence.)

First, there is a **substantial overlap between Street Cop's claims in this case versus what was raised previously in the First State Court Action**. In the First State Court Action, Street Cop filed a Complaint against Defendant alleging that the OSC exceeded its statutory authority and violated Street Cop's constitutional rights under the First and Fourth Amendments through the issuance of the Document Requests and ensuing 2022 Subpoena. (*See* North Cert., Ex. C, at *54, *60-66.) Along with the Complaint was an order to show cause seeking: (1) to enjoin the OSC from compelling Street Cop to comply with the OSC's Document Requests; (2) a declaration that the **Police Accountability Project exceeded the OSC's statutory authority**; and (3) to restrain the OSC from making future document requests without first establishing the relevance of the documents sought by the agency. (*Id.* at *49-50.) Like their challenges in the First State Court Action, Plaintiffs recycle many of the same theories that the production of **Benigno's sworn testimony violates their First and Fourth Amendment rights**. (Am. Compl. ¶¶ 15, 25.) Plaintiffs

again seek an order requiring Walsh and the OSC "to utilize less invasive method[s] to obtain information from Plaintiffs" prior to issuing an administrative subpoena. (*Id.* ¶ 9.)

Any of Plaintiffs' attempts to differentiate this action and the First State Court Action based on the differences in the 2023 Subpoena are unavailing. As stated, the State Court has issued rulings in both Enforcement Actions in favor of Defendant. (*See* North Correspondence.) Plaintiffs attempted to quash the 2023 Subpoena in the Enforcement Action based on nearly identical arguments presented in this federal action. (*Id.* at 24.) Specifically, Plaintiffs moved to quash on the basis that the OSC unlawfully targeted them, and that the 2023 Subpoena violated their First and Fourth Amendment rights. (*Id.*) The State Court wholly denied the motion to quash and found that Plaintiffs' efforts "to constrain the mode of [Benigno's] sworn testimony was] unconvincing." (*Id.* at 27.) Moreover, the State Court deemed that the clear similarity between the requests made in the 2022 and 2023 Subpoenas "render[ed] hollow" Plaintiffs' claims of harassment and retaliation. (*Id.*) Evidently, the State Court determined, and this Court agrees, that "no constitutional or due process infirmity" existed in seeking the production of Benigno's videotaped statements. (*Id.* at 29.)

In sum, Plaintiffs' fundamental theory underlying this case remains the same as what was advanced in the prior State Court proceedings; that is, the OSC's attempts to investigate Street Cop's October 2021 training program were retaliatory moves taken in response to a political commentator's appearance at the Conference. In every instance, such challenges have been rejected in the State Court proceedings. (*See* North Correspondence.) As recounted above, the State Court, Appellate Division, and New Jersey Supreme Court deemed these arguments to be without merit. The Appellate Division expressly denied Street Cop's arguments that the materials sought in the 2022 Subpoena were unlawful because the "OSC exceeded its statutory authority by

appearing to target Street Copy 'based on politics.'") (North Cert., Ex. M, at *12.) And, most recently, the State Court rejected Plaintiffs' attempts to quash the 2023 Subpoena in the Enforcement Actions. (*See* North Correspondence 17-30.)

Any endeavor to further disrupt compliance with the OSC's subpoenas through filing the Instant Action is denied, as granting such relief would run squarely against the smooth interplay between the federal and state courts. Indeed, this kind of conduct is precisely what the preclusion doctrines and res judicata are designed to safeguard against. *Landau v. Barouk*, No. 22-05259, 2023 WL 8271805, at *5 (D.N.J. Nov. 30, 2023) (noting that, for purposes of res judicata, "[t]he relevant inquiry focuses on whether the federal action would require [a court] to revisit issues and claims that were litigated or could have been litigated in the state court," and that *res judicata* estops a party from choosing "to abandon [part of a] claim at the state court level, hoping to raise it in federal court.") (quoting *Hutcherson v. Lauderdale County, Tenn.*, 326 F.3d 747, 759 (6th Cir. 2003)).

Accordingly, after analyzing the relevant factors and reviewing the Amended Complaint in this matter, the Court finds that the instant claims are based on the same causes of action advanced and denied in the First State Court Action.

## IV. CONCLUSION

For the reasons stated herein, the Court dismisses Plaintiffs' Amended Complaint with prejudice. It will enter an order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**